IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DARRIAN DANIELS,<br>    Plaintiff,<br><br>v.<br><br>GREENE, *et al.*,<br>    Defendants. | Case No. 3:25-cv-03089-JEH |

### Order

Plaintiff Darrian Daniels, proceeding *pro se* and presently incarcerated at Western Illinois Correctional Center ("Western"), filed a Complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. This matter is now before the Court on Plaintiff's Motion for Leave to File Amended Complaint (Doc. 11) and Plaintiff's Motion for Preliminary Injunction and/or Protective Order. (Doc. 12). For the reasons stated below, Plaintiff's Motion for Leave to File Amended Complaint is GRANTED, and Plaintiff's Motion for Preliminary Injunction and/or Protective Order is DENIED.

**I**

On April 10, 2025, Plaintiff filed a Complaint alleging that Defendants Warden Greene, John/Jane Does Mental Health Staff, John/Jane Does Placement Staff, and Dr. Trusewych violated his Eighth Amendment rights by denying him a single-man cell and accommodations for his hearing loss under the Americans with Disabilities Act. (Doc. 1).

On April 29, 2025, the Court dismissed Plaintiff's Complaint without prejudice as a violation of Federal Rules of Civil Procedure 18 and 20 and permitted Plaintiff to file an Amended Complaint. (Doc. 10).

On May 7, 2025, Plaintiff filed a timely Motion for Leave to File Amended Complaint (Doc. 11). Plaintiff's Motion is granted. The Court must now conduct a merit review of Plaintiff's Amended Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. In reviewing the Amended Complaint, the Court accepts the factual allegations as true, liberally construing them in the Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

**A**

Plaintiff names Dr. Trusewych as the sole Defendant in his Amended Complaint. He no longer names Warden Greene, John/Jane Does Mental Health Staff, and John/Jane Does Placement Staff as Defendants. Therefore, they are dismissed without prejudice.

Plaintiff states he was transferred to Western on January 22, 2025. During an examination with Defendant Dr. Trusewych on February 3, 2025, Defendant allegedly told Plaintiff there was no indication in his medical records that he failed a hearing test or had any ear injuries. As a result, Plaintiff claims he was denied an ADA disability phone call with his attorney.

On February 13, 2025, an unidentified nurse called Plaintiff to the Health Care Unit ("HCU") for a hearing test. When Plaintiff failed the test, the nurse allegedly informed him that he would be referred to an outside audiologist for a treatment plan.

On February 15, 2025, Defendant Dr. Trusewych called Plaintiff back to the HCU and informed him he would not be referred to an audiologist because there was no indication that he had failed a hearing test in the past.

Plaintiff alleges it is well-documented in his medical records at Menard Correctional Center ("Menard"), his former facility, that he is hearing-impaired due to ear injuries. Specifically, Plaintiff alleges he was stabbed in his right ear, which caused complete deafness in that ear. In 2020, Plaintiff alleges he was shot at close range with a large mace gun in his left ear, which caused hearing loss. Due to these injuries, Plaintiff alleges he was given hearing aids in 2022. Without hearing aids, Plaintiff asserts he is unable participate in video meetings with his psychologist and speak with his family and his attorney on the phone.

Plaintiff also alleges he spoke with Defendant Dr. Trusewych about unhealed burns on his right arm on February 3, 2025. Defendant allegedly denied medical treatment because there was nothing in Plaintiff's medical records that stated he was burned.

## B

### 1

It is well established that deliberate indifference to a serious medical need is actionable as a violation of the Eighth Amendment. *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008). A claim of deliberate indifference contains both an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Id.* An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes*, 546 F.3d at 522. To satisfy the subjective component, the inmate must demonstrate that the prison official acted with a "sufficiently culpable state

of mind." *Farmer*, 511 U.S. at 834. The official must know of and disregard an excessive risk to the inmate's health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 837. The prisoner must show that the defendant engaged in more than negligence and that the defendant's conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

Here, the Court finds that Plaintiff's allegations are sufficient to proceed on an Eighth Amendment deliberate indifference claim against Defendant Dr. Trusewych based on his alleged deliberate indifference to Plaintiff's hearing impairment and the alleged failure to refer him to an audiologist for further treatment in February 2025.

**2**

Under the Americans with Disabilities Act ("ADA"), "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Plaintiff's ADA claim is reviewed under Title II of the ADA, which applies to state prisoners. *See Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206 (1998). "To establish a violation, a plaintiff must show "he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability.'" *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) (quoting *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015)). A disability is defined as "a physical or mental impairment that substantially limits one or more major life activities of such individual." § 12102(1)(A). "[T]he phrase 'services, programs, or activities' in §

12132 includes recreational, medical, educational, and vocational prison programs." *United States v. Georgia*, 546 U.S. 151, 157 (2006); *see also Crawford v. Ind. Dep't of Corr.*, 115 F.3d 481, 483 (7th Cir. 1997).

In addition, the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794-94e, protects qualified persons with disabilities who are denied access to programs or activities because of their disability. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012) ("[r]efusing to make reasonable accommodations is tantamount to denying access"). "Like Title II, the Rehabilitation Act authorizes private citizens to bring actions for money damages, but its coverage is not restricted to public entities. The Rehabilitation Act applies to any 'program or activity receiving Federal financial assistance.'" *Ruffin v. Rockford Mem'l Hosp.*, 181 F. App'x 582, 585 (7th Cir. 2006) (internal citation omitted); *see also* 29 U.S.C. § 794(b). A claim under the RA is functionally identical to an ADA claim, *Jaros*, 684 F.3d at 672, and the remedial scheme of the RA is incorporated into the ADA. 42 U.S.C. § 12133; *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 111 (2d. Cir 2001). As state prisons accept federal funding, they are subject to the RA. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (citations omitted).

Plaintiff, who alleges he is hearing-impaired, has adequately alleged he is qualified person with a disability. 42 U.S.C. § 12102(1); 29 U.S.C. § 794. Due to the lack of hearing aids, Plaintiff states he is forced to communicate by writing. He claims that he was unable to participate in a video conference with his psychologist on April 22, 2025, and has been unable to talk to his family and his attorney on the phone. These allegations are sufficient to proceed on a claim under the ADA and RA.

While the ADA applies to public entities and the RA to federally funded programs or activities, neither applies to individuals. "As a general rule, there is no personal liability under Title II of the ADA or the RA. The only proper

defendant in a claim under the ADA and/or RA is the state agency (or a state official acting in his or her official capacity); employees of the IDOC are not amendable to suit under either Act." *Hogle v. Baldwin*, No. 17-01059, 2017 WL 4125258, at *4 (C.D. Ill. Sept. 18, 2017) (citing *Jaros*, 684 F.3d 670) (internal citations omitted)); *see also McNish v. Kayira*, No. 16-00430, 2016 WL 2851122, at *3 (S.D. Ill. May 16, 2016) (dismissing ADA and RA claims against IDOC employees with claims to proceed only against the IDOC Director).

The proper defendant is the relevant State department or agency. § 12131(1)(b); *Jaros*, 684 F.3d at 670, n. 2 (individual capacity claims are not available; the proper defendant is the agency or its director in his official capacity). Accordingly, the Court will *sua sponte* name Latoya Hughes, in her official capacity as Acting Director of the Illinois Department of Corrections ("IDOC"), as a Defendant. Plaintiff will be allowed to proceed on his ADA and RA claims against Defendant Hughes.

**3**

Plaintiff's allegations related to his unhealed burns are insufficient to proceed on a deliberate indifference claim, however. In a conclusory fashion, Plaintiff alleges he spoke with Defendant Dr. Trusewych about "unhealed burns on [his] right arm" on February 3, 2025. (Doc. 11-1 at p. 4). Dr. Trusewych allegedly told Plaintiff there was nothing in his medical records that stated Plaintiff had been burned with anything. Plaintiff provided no information about his burns or what medical treatment he allegedly needed. Therefore, Plaintiff had not sufficiently alleged that he suffered from an objectively serious medical condition or that Dr. Trusewych was deliberately indifferent. The claim regarding the alleged denial of medical treatment for his unhealed burns is dismissed without prejudice.

Plaintiff is advised that he may file a separate complaint regarding the alleged denial of medical treatment for his burns, as such a claim against Dr. Trusewych would not be properly joined with Plaintiff's ADA and RA claims against Defendant Hughes and his Eighth Amendment claim against Dr. Trusewych based on the denial of hearing aids in this matter. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits….").

## II

On May 7, 2025, Plaintiff filed a Motion for Preliminary Injunction and/or Protective Order seeking a Court Order requiring prison officials at Western to remove him from segregation and provide him with a single-man cell. (Doc. 12). Plaintiff states his prior cellmates violently assaulted him; they stabbed him in the right ear and left eye, leaving him completely deaf in his right ear and partially blind. Plaintiff alleges that a cellmate at Menard threw hot fluid on him, causing burns which have not fully healed. Due the attacks, Plaintiff alleges he suffers from depression and fears being in a cell with another inmate. As a result, a psychologist at Menard allegedly ordered a single-man cell permit.

When Plaintiff was transferred to Western, however, prison officials refused to place him in a single-man cell. Plaintiff refused his housing assignment and was placed in segregation. Plaintiff informed mental health staff members that he had been violently assaulted by past cellmates, but they allegedly advised him to either accept a cellmate or go to segregation. Plaintiff states he submitted two emergency grievances to Warden Greene, but she took no action. Plaintiff alleges the isolation in segregation has worsened his depression and that he is being denied mental health treatment.

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997); *accord Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm Int'l v Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party. *Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the Court's authority to enter an injunction in the corrections context. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer*, 682 F.3d at 683 (the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage." (internal quotation marks and citation omitted)).

The purpose of a temporary restraining order and ultimately a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *Am. Hosp. Ass'n v Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). The relief Plaintiff seeks here is different. The Seventh Circuit has described the type of injunction Plaintiff seeks, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*,

8

130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke,* 593 F.2d 772, 774 (7th Cir. 1978)).

Here, Plaintiff has not demonstrated a likelihood of success of the merits. Plaintiff did not name Warden Greene or the mental health staff members as Defendants in his Amended Complaint. Additionally, Plaintiff did not allege that he was denied a single-man cell or mental health treatment while he was in segregation. Plaintiff's request for a single-man cell is unrelated to his Eighth Amendment claim against Defendant Dr. Trusewych and his ADA and RA claims against Defendant Hughes based on the alleged denial of hearing aids. Therefore, Plaintiff's Motion for Preliminary Injunction and/or Protective Order is denied.

**IT IS THEREFORE ORDERED:**

1)      Plaintiff's Motion for Leave to File Amended Complaint [11] is GRANTED. The Clerk is directed to file Plaintiff's Amended Complaint (Doc. 11-1).

2)      According to the Court's Merit Review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, this case shall proceed on (1) a claim under the Americans with Disabilities Act and the Rehabilitation Act against Defendant Latoya Hughes, in her official capacity as the Acting Director of the Illinois Department of Corrections, based on the alleged denial of Plaintiff's hearing aids at Western Illinois Correctional Center; and (2) a claim under the Eighth Amendment against Defendant Dr. Trusewych based on his alleged deliberate indifference to the treatment of Plaintiff's hearing impairment and failure to refer him to an outside audiologist for treatment in February 2025. Additional claims shall not be included in the case above, except in the Court's discretion on motion by a party for good cause shown under Federal Rule of Civil Procedure 15.

3)      The Clerk is directed to ADD Latoya Hughes as a Defendant.

4) Defendants Greene, John/Jane Does (Mental Health Unit), and John/Jane Does (Placement Staff) are DISMISSED WITHOUT PREJUDICE for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and § 1915A. The Clerk is directed to TERMINATE these Defendants

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing a waiver of service. If Defendants fail to sign and return a waiver of service to the Clerk within 30 days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on Defendants and will require Defendants to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).

7) Defendants shall file an answer within 60 days of the date the Clerk sends the waiver of service. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' position. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the answer is necessary or will be considered. If Defendants have not filed an answer or appeared through counsel within 90 days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter a scheduling order setting discovery and dispositive motion deadlines.

8) If Defendants no longer work at the address Plaintiff provided, the entity for whom Defendants worked while at that address shall submit to the Clerk Defendants' current work address, or, if not known, Defendants' forwarding address. This information shall be used only for effectuating service. Documentation of Defendants' forwarding address shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Plaintiff does not need to mail to Defendants' counsel copies of motions and other documents that Plaintiff has filed with the Clerk. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance and the Court has entered a scheduling order, which will explain the discovery process in more detail.

10) Defendants' counsel is hereby granted leave to depose Plaintiff at Plaintiff's place of confinement. Defendants' counsel shall arrange the time for the deposition.

11) Plaintiff shall immediately inform the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.

12) Plaintiff shall be provided a copy of all pertinent medical records upon request.

13) Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' counsel. The Clerk is directed to enter the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

14) The Clerk is directed to set an internal court deadline 60 days from the entry of this Order for the Court to check on the status of service and enter scheduling deadlines.

*It is so ordered.*

Entered: May 8, 2025

s/Jonathan E. Hawley
U.S. District Judge