IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| DARRIAN DANIELS,<br>  Plaintiff,<br><br>v.<br><br>ZORIAN TRUSEWYCH, *et al.*,<br>  Defendants. | Case No. 3:25-cv-03089-JEH |

### Order

Plaintiff Darrian Daniels, an inmate at Western Illinois Correctional Center ("Western"), filed an action under 42 U.S.C. § 1983 for alleged violations of his constitutional rights. (Doc. 14). This matter is currently before the Court on Plaintiff's Third Motion for Preliminary Injunction. (Doc. 33). For the reasons stated below, Plaintiff's Motion is DENIED.

**I**

At merit review, the Court allowed Plaintiff to proceed on (1) a claim under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") against Defendant Latoya Hughes, in her official capacity as Acting Director of the Illinois Department of Corrections, based on the alleged denial of Plaintiff's hearing aids at Western; and (2) a claim under the Eighth Amendment against Defendant Dr. Trusewych based on his alleged deliberate indifference to the treatment of Plaintiff's hearing impairment and failure to refer him to an outside audiologist for treatment in February 2025. (Doc. 8 at p. 9).

On July 31, 2025, Plaintiff filed a Motion for Preliminary Injunction seeking a Court Order requiring Defendants to provide him with medical treatment for his hearing loss. (Doc. 33).

II

Plaintiff alleges that when he was transferred to Western in January 2025, several unknown medical staff members falsely claimed there was nothing in his medical records to show that he ever failed a hearing test in the past, injured his ears, or needed hearings aids. Plaintiff states that he submitted an emergency grievance to the Administrative Review Board ("ARB"), but the ARB refused to address the grievance because it had not been exhausted at the prison level. Plaintiff states that he filed an emergency grievance on an unspecified date. Plaintiff states that the warden responded to his grievance and stated that "[he] will be going out next week to get a treatment plan to get fitted for hearing aids." *Id.* at p. 2.

During an examination with Defendant Dr. Trusewych on February 3, 2025, Plaintiff alleges that Defendant falsely informed him that his medical records did not indicate that he failed a hearing test or injured his ears. Defendant allegedly stated that Plaintiff would not be classified as an ADA offender for hearing loss at Western. As a result, Plaintiff asserts he was unable to have a legal phone call with his attorney on February 4, 2025.

Plaintiff alleges that he was given the first part of a hearing test on February 13, 2025, and informed that he failed and would be referred to an audiologist for a treatment plan. Plaintiff states that Defendant Dr. Trusewych called him back to the healthcare unit on February 15, 2025, and again informed him that he would not be considered an ADA offender for hearing loss at Western because he had never failed a hearing test or injured his ears.

Plaintiff argues that his hearing loss presents "a threat to his safety" in prison because he cannot hear gun shots or staff orders. *Id.* at p. 3. Plaintiff also states that he is unable to use the phone to talk to his attorney and family and needs hearing aids to function. Despite filing this lawsuit, sending letters to

2

Defendant Hughes, and submitting several medical request forms to healthcare staff members, Defendant Dr. Trusewych, and the ADA Coordinator, Plaintiff asserts that Defendants have still refused to provide medical treatment for his hearing loss and refer him to an outside audiologist for a treatment plan. On an unspecified date, an unknown nurse and mental health staff member allegedly came to Plaintiff's cell and held up a note instructing him to stop writing to them for medical treatment.

Plaintiff submitted medical records in support of his Motion. An Offender Outpatient Progress Note indicates that he was referred to a "Wexford audiologist, per Holmes Settlement Agreement, for failing onsite hearing screening" on June 24, 2024. *Id.* at p. 7. Although his medical record indicates that "[a]udiology referral paperwork [was] delivered to [the] Medical Furlough Clerk for processing and scheduling" the same day, there is no indication that an appointment with an audiologist was ever scheduled. *Id.* Plaintiff also attached a copy of an "Offender Hearing Screening and Treatment Protocol" from Menard Correctional Center. *Id.* at p. 8. A nurse noted that Plaintiff reported that he had difficulty hearing and had been stabbed in both ears. *Id.*

### III

A preliminary injunction is "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997); *accord Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right"). To prevail, "the moving party must demonstrate: (1) a likelihood of success on the merits; (2) a lack of an adequate remedy at law; and (3) an irreparable harm will result if the injunction is not granted." *Foodcomm Int'l v. Barry,* 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). If the moving party meets the first three requirements, then the district

court balances the relative harms that could be caused to either party. *Incredible Tech., Inc. v. Virtual Tech., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005).

The Prisoner Litigation Reform Act ("PLRA") limits the scope of the court's authority to enter an injunction in the corrections context. *Westefer v. Neal,* 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2); *see also Westefer,* 682 F.3d at 683 (PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted)).

The purpose of a temporary restraining order and ultimately a preliminary injunction is to preserve the status quo pending a final hearing on the merits of the case. *Am. Hosp. Ass'n v. Harris*, 625 F.2d 1328, 1330 (7th Cir. 1980). The relief Plaintiff seeks here is different. The Seventh Circuit has described the type of injunction Plaintiff seeks, where an injunction would require an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke,* 593 F.2d 772, 774 (7th Cir. 1978)).

To succeed on his Eighth Amendment deliberate indifference claim against Defendant Dr. Trusewych, Plaintiff must first show that he suffered from an objectively serious medical condition. Second, Plaintiff must show that Dr. Trusewych acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. In other words, he must establish that Dr. Trusewych knew of and disregarded an excessive risk to his health. *Id*. at 837. Plaintiff must show that Dr.

Trusewych engaged in more than negligence and that his conduct approached intentional wrongdoing or criminal recklessness. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citing *Farmer*, 511 U.S. at 837).

To succeed on a claim under the ADA, Plaintiff must show "he is a qualified individual with a disability, that he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015).

At best, Plaintiff's allegations permit a reasonable inference that he disagrees with the course of treatment he has received at Western, that Defendants chose a course of treatment different from that previously provided, or that he desired alternative treatment, none of which are sufficient to show a constitutional violation. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) ("Evidence that *some* medical professionals would have chosen a different course of treatment is insufficient to make out a constitutional claim.") (emphasis in original); *Harper v. Santos*, 847 F.3d 923, 928 (7th Cir. 2017) (prisoner is not entitled to dictate medical treatment); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (disagreement with course of treatment not sufficient to show constitutional violation). Plaintiff has not demonstrated a substantial likelihood of success on the merits of his claims at this early stage of the proceedings. Therefore, Plaintiff's Motion is DENIED.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Preliminary Injunction [33] is DENIED.**

*It is so ordered.*

Entered: August 4, 2025

s/Jonathan E. Hawley
U.S. District Judge